**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**N.S., ARNOLD GACHUPIN,
and JUDY GACHUPIN,**

        **Plaintiffs,**

**v.**                                    **No. 1:24-cv-00276-JMC-SCY**

**ALBUQUERQUE PUBLIC SCHOOLS;
LOVIATA MITCHELL, in her individual
capacity; and MANUEL ALZAGA, in his
individual capacity,**

        **Defendants.**

## AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, TORT CLAIMS, AND DAMAGES

Plaintiffs N.S., Arnold Gachupin, and Judy Gachupin, by and through their counsel of record, Kennedy, Hernandez & Harrison, P.C., bring this Complaint against Defendants Albuquerque Public Schools ("APS"), Loviata Mitchell, a former teacher at Volcano Vista High School ("VVHS"), and Manuel Alzaga, Assistant Principal at VVHS, to vindicate their civil rights under the New Mexico Civil Rights Act ("NMCRA") and 42 U.S.C. § 1983, and for tort and other violations under the New Mexico Tort Claims Act ("NMTCA").

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1331. This case presents a civil action arising under the Constitution, laws, or treaties of the United States.

2.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to these claims occurred in this district.

## PARTIES

3.      Plaintiffs were residents of Bernalillo County, New Mexico at all times relevant to this action.

4.      Upon information and belief, at all relevant times, Ms. Mitchell was a professional educator employed by APS and acting within the scope of her duties as a teacher at VVHS in Bernalillo County, New Mexico.

5.      Upon information and belief, at all relevant times, Mr. Alzaga was the VVHS Assistant Principal and acting within the scope of his duties as an employee of APS.

6.      Defendant APS is a governmental entity that operates and maintains VVHS, and it employed and exercised direct supervisory control over Ms. Mitchell and Mr. Alzaga during the relevant time.

## FACTUAL ALLEGATIONS

7.      During the 2021-22 school year, APS employed Ms. Mitchell as a science teacher at VVHS.

8.      During the 2021-22 school year, Plaintiff N.S. was a high school sophomore, and she took Ms. Mitchell's science class in the Spring of 2022.

9.      On May 2, 2022, N.S. was 16 years old.

### School-Sponsored Sword Fighting

10.      On the morning of May 2, 2022, Ms. Mitchell brought two swords with her onto VVHS premises and into her classroom.

11.      Ms. Mitchell initially kept the swords concealed from students in her classroom and, upon information and belief, also kept them concealed from security staff, administrators, and other faculty.

12.     During N.S.'s class period with Ms. Mitchell, a chemistry class, Ms. Mitchell announced that she had a "surprise" for her students.

13.     Ms. Mitchell revealed the swords to her students and told them that the swords were "props."

14.     The swords were not props; rather, at least one sword was a katana-style sword with a long, curved blade and sharp edge.

15.     Ms. Mitchell instructed the students to rearrange their desks, creating a space in the middle of the classroom.

16.     Ms. Mitchell then encouraged the students, in pairs, to fight one another with the swords in the cleared space in the middle of the classroom.

17.     Ms. Mitchell set a two-minute timer for each sword fight, displayed on a large screen using the projector in the classroom.

18.     N.S. recorded a video of two of her male classmates fighting with the swords before Ms. Mitchell selected her to fight.

19.     In the video, one student wields a katana-style sword, which appears heavy in his hands; this student's body language shows uncertainty about how to use it, and he appears to wield it defensively by parrying the other student's attacks, moving backward, and retreating away from the other student.

20.     In the video, the other student holds a rapier-style sword, which appears longer and lighter than the katana-style sword, and he makes stabbing motions toward the other student.

21.     The video of this sword fight shows Ms. Mitchell looking on approvingly.

22.     Upon information and belief, none of the Defendants sought written authorization from the students' parents or guardians before the sword fights.

23.     Neither Ms. Mitchell nor APS provided the students who participated in or witnessed the sword fights with any training or safety equipment to prevent foreseeable injuries like the one N.S. suffered.

24.     Ms. Mitchell was neither qualified nor authorized to teach or supervise sword fighting, and N.S.'s guardians had not approved of her participation in any such activity.

### N.S.'s Sword-Fighting Injury and Delayed Emergency Care

25.     Shortly after the male students in the video fought, Ms. Mitchell called upon N.S. and another student to fight.

26.     N.S. and the other student began sword fighting while Ms. Mitchell watched.

27.     At approximately 11:15 a.m., the other student struck N.S. across her right forearm, wrist, and hand with the katana-style sword.

28.     N.S. suffered a large and deep laceration across her right hand and wrist that is inconsistent with the use of a "prop" sword.

29.     N.S. experienced intense physical pain and began bleeding heavily from the wound.

30.     Immediately after N.S. was cut with the sword, Ms. Mitchell stated, "I'm in trouble!" and ordered the students—including N.S.—to delete any video recordings they had taken of the sword fights, to refrain from posting anything about the sword fights online, and to not describe the incident to anyone.

31.     One of N.S.'s classmates took a video of her sword fight but refused to give it to N.S. because of Ms. Mitchell's instructions. Upon information and belief, this classmate and others deleted the videos per Ms. Mitchell's instructions.

32.     As N.S., Ms. Mitchell attempted to call the VVHS Health Office for medical assistance, but she could not figure out how to do so.

33.     Even though N.S. was bleeding profusely and had obviously sustained a deep laceration beyond the scope of first aid, Ms. Mitchell did not immediately call 911.

34.     N.S. had to ask a friend to help her call her grandfather to let him know that she had been cut with a sword while in class. Ms. Mitchell waited approximately twenty minutes after N.S. was cut with the sword to contact her grandfather.

35.     As N.S. began to feel nauseous and weak from blood loss, another student ran to the VVHS health office for medical assistance.

36.     A VVHS health assistant arrived in Ms. Mitchell's classroom shortly thereafter.

37.     Approximately thirty minutes after N.S. was cut, the health assistant called 911 and began providing first aid.

38.     Approximately fifteen minutes after the 911 call, the health assistant transferred N.S. to the care of Albuquerque Fire Department EMS staff, who transported her by ambulance to the emergency room.

39.     Upon information and belief, VVHS security personnel took possession of the swords.

40.     Albuquerque Fire Department EMS staff who were dispatched to the scene noted: "[T]eacher and staff report that the pt and another student were playing with a 'prop sword' [--] upon inspection this appeared to be a real sword consistent with [a] 'samurai sword' style item."

41.     Photographs were taken of the sword as shown here:





42.     N.S. arrived at the emergency room at approximately 12:30 p.m., over an hour after

the sword-fighting injury occurred. She had a gaping wound on her right wrist.







**Official Copy**

**PRESBYTERIAN**  1100 Central Ave SE  Albuquerque NM 87106  Standard Report

MRN: ■■■■  DOB: ■■■■  Sex: F
Adm: 5/2/2022, D/C: 5/2/2022

**ED Provider Notes (continued)**
ED Provider Notes by Sean Patrick O'Brien, MD at 5/2/2022 5:01 PM (continued)

Generated on 8/1/22 1:09 PM                    Page 5

## **VVHS Administration's Response to the Incident**

43.     The official APS Student Accident Report, written and signed by Assistant Principal Mr. Alzaga, provides the following description of the sword-fighting incident and N.S.'s resultant injury: "The teacher brought a 'prop' to school to show a lesson on metal and melding (science). The prop was a sword and the student accidentally cut the other student with it. HR/nursing have been notified."

44.     In response to the APS Student Accident Report question, "Did the student miss time from school or suffer disability?" Mr. Alzaga wrote, "Yes."

9

45.     In response to the Report's question, "Did the injury violate school rules?" Mr. Alzaga checked a box indicating "No."

46.     Despite space on the Report to explain why the injury did not violate school rules, Mr. Alzaga provided no further information, instead simply writing, "Please contact administration."

### APS Policies and New Mexico Laws Regarding Deadly Weapons on School Campuses

47.      APS has a duty to provide a safe learning environment for all students. APS mandates that its employees "must not engage in activities which violate federal, state or local laws or which, in any way, diminish the integrity, efficiency or discipline of the District." APS, *Employee Handbook: Standards of Conduct*, https://www.aps.edu/human-resources/employee-resources/standards-of-conduct (last visited February 12, 2024).

48.     APS lists as an "unacceptable activit[y]" the "[p]ossession of dangerous or illegal firearms, weapons or explosives on District property or while on duty."

49.     Apart from police officers and security guards, APS flatly prohibits "all persons who enter District property from carrying handguns, firearms, knives or other weapons of any kind regardless of whether the person is licensed to do so," unless that person is "given written consent by APS to carry a weapon on the property or in their vehicle." APS, *APS Employee Handbook* at 11 (October 19, 2019), https://www.aps.edu/human-resources/employee-resources/documents/employee-handbook-2018 (last visited February 12, 2024).

50.     Upon information and belief, Ms. Mitchell did not seek or obtain written permission from APS to bring the swords onto VVHS premises.

51.     New Mexico law prohibits the "[u]nlawful carrying of a deadly weapon on school premises except by . . . a person conducting or participating in a school-approved program, class or other activity involving the carrying of a deadly weapon." NMSA 1978, § 30-7-2.1(A).

52.     The swords that Ms. Mitchell brought onto VVHS premises were deadly weapons as Section 30-1-12 defines that term:

> "[D]eadly weapon" means . . . any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including swordcanes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted.

NMSA 1978, § 30-1-12(B).

53.     Upon information and belief, when Ms. Mitchell brought the swords onto VVHS premises, she violated NMSA 1978, § 30-7-2.1, because sword-fighting among students in classrooms is not a school-approved activity at VVHS or APS and/or Ms. Mitchell was not acting as a part of any school-approved activity.

54.     APS's policy prohibiting employees from bringing deadly weapons to school is consistent with APS's rules for students, who are also prohibited from bringing such items to school. APS's Handbook for Student Success provides for disciplinary procedures for students who bring weapons into school, or who use them. *See APS Handbook for Student Success 2022-2023* at 45-46, https://www.aps.edu/service-center/documents/aps-student-handbook.pdf/view (last visited January 10, 2024).

55.     APS requires that all APS employees "serve as positive role models for students and set good examples of conduct," expecting that "each employee . . . maintain the highest standard of conduct and act in a mature and responsible manner at all times."

56.     APS also prohibits "[a]ny other act or omission which impairs or restricts the ability of the District to provide a safe and healthy environment for employees and students."

57.     APS procedural directives state that "[i]n the event of student injury or illness, priority shall be given to the immediate care of the student," and that,

> In any situation requiring medical care beyond first aid . . . [t]he Emergency Medical Service or paramedics, 911 shall be called immediately for such conditions as profuse bleeding, cessation or obstruction of breathing, deep shock, head injury with deep unconsciousness, electric shock, heart attack or any other life threatening condition.

APS, *Medical Care of Students: General and Emergency*, https://www.aps.edu/about-us/policies-and-procedural-directives/procedural-directives/j.-students/medical-care-of-students-general-and-emergency (last visited January 9, 2024).

58.     New Mexico law makes it a felony to cause a child—a "person who is less than eighteen years of age," NMSA 1978, § 30-6-1(A)(1)—to be "placed in a situation that may endanger the child's life or health," NMSA 1978, § 30-6-1(D).

59.     New Mexico law also makes it a fourth-degree felony to tamper with or falsify public records, which consists of: "[A]ny public officer or public employee knowingly falsifying or falsely making any record or file, authorized or required by law to be kept." NMSA 1978, § 30-26-1(C).

### N.S.'s Permanent Physical and Psychological Injuries

60.     As a result of Defendants' acts and omissions, as described above, N.S. suffered permanent physical and psychological injuries. As a result, she has incurred medical expenses,

including surgical procedures, occupational and physical therapy, and mental health counseling. Those expenses will continue into the foreseeable future.

61.     When the sword cut into N.S.'s right hand and wrist, it damaged and/or severed multiple nerves and tendons which required surgical repair.

62.     Despite this surgical repair of N.S.'s nerves and tendons, it was not possible to fully repair them, and they remain damaged. As a result, her wrist and hand are permanently injured. Those injuries cause her ongoing daily pain, as well as cause her to be unable to perform many basic daily tasks.

63.     N.S. continues to require medical and rehabilitative care, such as occupational and physical therapy and follow-up orthopedic visits.

64.     N.S. experienced extreme pain and suffering when the sword cut into her hand and wrist and during the time she was bleeding and waiting for medical attention. She endured the pain and suffering of an emergency room visit and the suturing of a deep, gaping wound. She then endured painful surgery, after which she stayed in bed for days because of the pain.

65.     Even after the initial recovery from surgery, N.S. has continued to endure ongoing pain, stiffness, loss of mobility, loss of strength, and loss of sensation in her dominant hand.

66.     N.S. still suffers from the loss of fine motor control and coordination in her dominant hand.

67.     N.S.'s dominant hand is now significantly weaker than her non-dominant hand.

68.     N.S. struggles with daily tasks such as buttoning buttons, fastening zippers, and preparing food.

69.     It is difficult or impossible for N.S. to lift or hold certain objects with her right hand, which forces her to compensate by using her left, non-dominant hand for many activities. N.S. is now suffering pain in her left wrist as a result.

70.     N.S. finds writing for more than a few minutes painful and difficult.

71.     N.S. suffers from lower temperatures and subsequent pain in her right hand and fingers as a result of the injury; this makes certain activities and jobs requiring exposure to the cold impossible or extremely painful for her.

72.     N.S. experienced severe emotional distress as a result of the incident, which continues to cause her nightmares and flashbacks.

73.     A psychologist treating N.S. diagnosed her with post-traumatic stress disorder as a result of the injury.

74.     N.S. is permanently scarred and disfigured and suffers emotionally when she looks at the scar or when others comment on it.

75.     N.S. can no longer fully participate in recreational activities that she used to enjoy, such as giving manicures, pottery, and weightlifting.

76.     N.S. will be precluded from certain career opportunities because of her injuries and will suffer a loss of income.

77.     This injury has severely compromised N.S.'s overall enjoyment and quality of life.

78.     The injuries to N.S.'s right hand and wrist are permanent.

### **Long-term Effects of N.S.'s Injury on the Gachupins**

79.     Before the injury, Plaintiff N.S. participated in daily activities that helped Plaintiffs Arnold and Judy Gachupin around the house, such as cleaning, cooking, and taking out the trash.

80.     Since her injury, N.S.'s ability to help around the house has been significantly impaired. The Gachupins now must help N.S. with tasks she used to do alone.

81.     The Gachupins also must help N.S. with self-care activities that she used to do by herself.

82.     Because of the injury, N.S. has become withdrawn and depressed; as a result, the Gachupins no longer enjoy as close of a relationship with their granddaughter. N.S. is not the same emotionally as she was before the injury, and this has affected the Gachupins' relationship with N.S., their quality of life, and their home environment.

### COUNT I:
### CONSTITUTIONAL VIOLATIONS PURSUANT TO
### THE NEW MEXICO CIVIL RIGHTS ACT
### AGAINST DEFENDANT APS

83.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

84.     APS is a public body as the New Mexico Civil Rights Act defines that term. *See* NMSA 1978, § 41-4A-2 ("'[P]ublic body' means . . . an entity created by the constitution of New Mexico or any branch of government that receives public funding, including . . . school districts").

85.     Ms. Mitchell, whose conduct is described herein, was acting on behalf of, under color of, or within the course and scope of the authority APS gave her. APS is therefore liable for the conduct of Ms. Mitchell. *See* NMSA 1978, § 41-4A-3(B) and (C).

86.     APS, acting through Ms. Mitchell, deprived N.S. of the "rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico," NMSA 1978, § 41-4A-3(A); namely, APS violated N.S.'s inherent and inalienable right to safety, *see* N.M. CONST. art. II, § 4 ("All persons . . . have certain natural, inherent and inalienable rights, among which are the rights of enjoying and defending life and liberty . . . and of seeking and obtaining safety and happiness."), and violated her substantive due process right to be free from state-created

15

danger, *see* N.M. CONST. art. II, § 18 ("No person shall be deprived of life, liberty or property without due process of law.").

87.     Ms. Mitchell and APS violated N.S.'s constitutional right to safety by directing her to participate in a sword fight with a deadly weapon, without safety equipment and training.

88.     Ms. Mitchell and APS violated N.S.'s substantive due process right to be free from state-created danger because:

   a.     N.S. was a member of a limited and specifically definable group: a high school student in Ms. Mitchell's chemistry class;

   b.     Ms. Mitchell's conduct in bringing swords to school and directing her students to fight each other without any instruction or any safety equipment exposed N.S. and all students in that class to a substantial risk of serious, immediate, and proximate harm;

   c.     The risk of such harm was known and obvious;

   d.     Despite knowing this obvious risk, Ms. Mitchell directed students to sword fight for two minutes each, recklessly and in conscious disregard of the risk of serious injury or death;

   e.     That a licensed teacher would not only bring in dangerous weapons to a school in contravention of school policies governing both students and staff and in violation of state law, misrepresent their deadly nature, and then direct her students to fight with them without any training or safety equipment, shocks the conscience; and

   f.     Although N.S.'s friend struck her, Ms. Mitchell—a state actor— created and orchestrated the danger and increased N.S.'s vulnerability to that danger.

89.     By these violations of constitutional rights secured by Article II, §§ 4 and 18 of the New Mexico Constitution, APS and Ms. Mitchell caused N.S.'s injury and subsequent damages, including, but not limited to, physical injury, past and future medical expenses, pain and suffering, lost future earnings, loss of mobility, loss of sensation, loss of strength, loss of range of motion,

loss of fine motor control and coordination, decreased hand temperature and loss of cold tolerance, scarring and disfigurement, loss of enjoyment of life, and psychological and emotional distress.

90.    WHEREFORE, Plaintiffs seek compensatory damages, attorneys' fees, costs, and any other relief available to them under the New Mexico Civil Rights Act.

## COUNT II:
## CONSTITUTIONAL VIOLATIONS PURSUANT TO 42 U.S.C. § 1983
## AGAINST DEFENDANT MITCHELL

91.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

92.    Ms. Mitchell, whose conduct is described herein, was acting on behalf of, under color of, and within the course and scope of the authority of the State of New Mexico as a teacher in the APS school system when she brought two swords to VVHS and directed her students to fight each other with them.

93.    Ms. Mitchell deprived N.S. of her substantive due process right under the Fourteenth Amendment to the United States Constitution to be free from state-created danger because:

    a.    N.S. was a member of a limited and specifically definable group: a high school student in Ms. Mitchell's chemistry class on the day Ms. Mitchell brought swords to school;

    b.    Ms. Mitchell's conduct in bringing swords to school, assuring her students that these swords were "props," and directing her students to fight each other without any instruction or any safety equipment exposed N.S. and all students in that class to a substantial risk of serious, immediate, and proximate harm;

    c.    The risk of such harm was known and obvious;

    d.    Despite knowing this obvious risk, Ms. Mitchell directed students to sword fight for two minutes each, recklessly and in conscious disregard of the risk of serious injury or death;

    e.    That a licensed teacher would not only bring in dangerous weapons to a school in contravention of school policies governing both students and staff

17

and in violation of state law, misrepresent their deadly nature, and then direct her students to fight with them without any training or safety equipment, shocks the conscience; and

f.      Although N.S.'s friend struck her, Ms. Mitchell—a state actor—created, sponsored, and orchestrated the danger and increased N.S.'s vulnerability to that danger.

94.     For the above-stated reasons, Ms. Mitchell deprived N.S. of the rights, privileges, or immunities secured by the Fourteenth Amendment to the United States Constitution. *See* U.S. CONST. amend. XIV, § 1.

95.     Furthermore, Ms. Mitchell's actions were taken with reckless disregard for N.S.'s constitutional rights; Ms. Mitchell's actions recklessly created the danger that caused N.S.'s injury.

96.     By these violations of the Fourteenth Amendment to the United States Constitution, Ms. Mitchell directly caused N.S.'s injury and subsequent damages, including, but not limited to, physical injury, past and future medical expenses, pain and suffering, lost future earnings, loss of mobility, loss of sensation, loss of strength, loss of range of motion, loss of fine motor control and coordination, decreased hand temperature and loss of cold tolerance, scarring and disfigurement, loss of enjoyment of life, and psychological and emotional distress.

97.     WHEREFORE, Plaintiffs seek compensatory damages, punitive damages, attorneys' fees, and costs under 42 U.S.C. § 1983 and §1988.

## COUNT III:
## NEGLIGENCE PURSUANT TO THE NEW MEXICO TORT CLAIMS ACT AGAINST DEFENDANTS MITCHELL AND APS

98.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

99.     APS is a "governmental entity" as the New Mexico Tort Claims Act defines that term. *See* NMSA 1978, § 41-4-3(B).

100.    Ms. Mitchell is a "public employee" as the New Mexico Tort Claims Act defines that term. *See* NMSA 1978, § 41-4-3(F).

101.    At all relevant times, APS employed Ms. Mitchell as a teacher.

102.    Ms. Mitchell was acting within the scope of her duties as a public employee in the operation and/or maintenance of the APS building in which her classroom was located at the time that N.S. was injured.

103.    APS is vicariously liable for the torts committed by its employees acting within the scope of their duties, including those of Ms. Mitchell.

104.    As an APS teacher, Ms. Mitchell had a duty to act in a reasonable manner to protect students and other APS employees from dangerous conditions and to provide a safe, healthy work and educational environment.

105.    APS school policy mandates that any employee other than a security guard or police officer must obtain written permission before bringing dangerous weapons onto school property.

106.    Upon information and belief, Ms. Mitchell did not obtain written permission to bring two deadly weapons into the school and direct her students to fight one another with them.

107.    Ms. Mitchell breached her duty of care and acted contrary to APS policy when she brought two dangerous, deadly weapons onto VVHS premises.

108.    Ms. Mitchell breached her duty of care and acted negligently in directing her students to fight one another with swords.

109.    Ms. Mitchell not only breached her duty of care for the students but acted in reckless disregard for their safety when she directed them to fight each other with swords without any training or protective equipment and after reassuring the students that the swords were "props."

110.     Because Ms. Mitchell misled N.S. and the other students into believing that the swords were only "props" and not dangerous weapons, the students did not understand or appreciate the risks involved in sword fighting; therefore, N.S. could assume no risk when she and her friend started to sword fight at Ms. Mitchell's direction.

111.     Ms. Mitchell further breached her duty of care when she failed to follow APS procedures and respond quickly and appropriately to the emergency medical situation arising from N.S.'s sword-fighting injury.

112.     Ms. Mitchell acted contrary to the safety and emergency policies APS had in place to protect students, faculty, and staff.

113.     This failure caused additional pain and suffering to N.S., who suffered from a serious untreated injury and was without pain medication for at least an hour.

114.     Ms. Mitchell's negligence created a dangerous condition that threatened a class of users of a publicly operated and maintained building, including N.S., when she brought two deadly weapons to school, assured her students that the swords were "props," and then directed her students to fight each other with the swords in her classroom.

115.     Ms. Mitchell's negligence created a separate dangerous condition that threatened the safety of students at VVHS, including N.S., when she failed to respond quickly and appropriately to the emergency medical situation arising from N.S.'s sword-fighting injury.

116.     For the reasons stated above, governmental immunity from tort liability is waived under NMSA 1978, § 41-4-6(A).

117.     Ms. Mitchell and APS's breach of duties and disregard for students' safety resulted in N.S.'s damages and injuries, including, but not limited to, physical injury to N.S.'s right hand, past and future medical expenses, pain and suffering, lost future earnings, loss of mobility, loss of

sensation, loss of strength, loss of range of motion, loss of fine motor control and coordination, decreased hand temperature and loss of cold tolerance, scarring and disfigurement, loss of enjoyment of life, and psychological and emotional distress.

118.    WHEREFORE, Plaintiffs seek compensatory damages, costs, and any other relief available to them under the New Mexico Tort Claims Act.

**COUNT IV:**
**NEGLIGENCE *PER SE* PURSUANT TO THE NEW MEXICO TORT CLAIMS ACT AGAINST DEFENDANTS MITCHELL AND APS**

119.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

120.    Ms. Mitchell was acting within the scope of her duties as a public employee in the operation and/or maintenance of the APS building in which her classroom was located at the time that N.S. was injured.

121.    APS is vicariously liable for the torts its employee, Ms. Mitchell, committed.

122.    As an APS employee and as a member of the general public, Ms. Mitchell had a statutory duty under NMSA 1978, § 30-7-2.1(A) to not bring weapons onto school premises, unless as part of a school-approved activity.

123.    As a student, N.S. is among the class of persons NMSA 1978, § 30-7-2.1(A) is intended to protect.

124.    N.S.'s injury from a deadly weapon is the type of injury NMSA 1978, § 30-7-2.1(A) is intended to prevent.

125.    Upon information and belief, sword fighting was not a school-approved activity at VVHS at the time of N.S.'s injury, and she was not enrolled in such a program at the time of her injury.

126. Ms. Mitchell breached her duty of care and violated state law when she brought swords onto school premises and directed students to fight each other with the swords.

127. Ms. Mitchell also violated state law when she placed N.S. and her classmates—all of whom were minors—"in a situation that may endanger the child's life or health" by encouraging them to sword fight without any training or protective equipment. NMSA 1978, § 30-6-1(D).

128. As a minor, N.S. was among the class of persons NMSA 1978, § 30-6-1(D) was intended to protect.

129. N.S. was injured in the sword fight due to Ms. Mitchell's statutory negligence.

130. Because Ms. Mitchell's conduct violated multiple state laws, Ms. Mitchell is liable for negligence *per se*.

131. Ms. Mitchell created a dangerous condition that threatened a class of users of a publicly operated and maintained building, including N.S., when Ms. Mitchell brought two deadly weapons to school in violation of state law and directed her students to fight each other with the swords in her classroom.

132. For the reasons stated above, governmental immunity from tort liability is waived under NMSA 1978, § 41-4-6(A).

133. Ms. Mitchell's negligence *per se* caused N.S.'s damages, including physical injury to her right hand, past and future medical expenses, pain and suffering, lost future earnings, loss of mobility, loss of sensation, loss of strength, loss of range of motion, loss of fine motor control and coordination, decreased hand temperature and loss of cold tolerance, scarring and disfigurement, loss of enjoyment of life, and psychological and emotional distress.

134. WHEREFORE, Plaintiffs seek compensatory damages, costs, and any other relief available to them under the New Mexico Tort Claims Act.

**COUNT V:**
**NEGLIGENCE AND NEGLIGENCE *PER SE* PURSUANT TO**
**THE NEW MEXICO TORT CLAIMS ACT**
**AGAINST DEFENDANTS ALZAGA AND APS**

135.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

136.    At all relevant times, APS employed Mr. Alzaga as VVHS's Assistant Principal.

137.    Mr. Alzaga was acting within the scope of his duties as a public employee in charge of enforcing safety policies and procedures when he responded to the incident and completed the Student Accident Form.

138.    APS is vicariously liable for the negligent acts of its employees acting within the scope of their employment, including Mr. Alzaga.

139.    As an APS employee, Mr. Alzaga had a duty to reasonably and diligently respond to and investigate any student injury on school property.

140.    In these situations, Mr. Alzaga has a duty to accurately and truthfully report the student's injury, especially those requiring emergency medical services, in a Student Accident Report.

141.    New Mexico state law makes it a fourth-degree felony to tamper with or falsify public records, which consists of: "any public officer or public employee knowingly falsifying or falsely making any record or file, authorized or required by law to be kept." NMSA 1978, § 30-26-1(C).

142.    Instead of diligently investigating the incident and documenting it accurately as stemming from an unapproved and unlawful sword fight, Mr. Alzaga falsely wrote on the official APS Student Accident Report that "[t]he teacher brought a 'prop' to school to show a lesson on metal and melding (science)," implying that the injury occurred during an approved school activity while the students were merely observing or handling the swords.

143.     Furthermore, Mr. Alzaga falsely indicated in the Student Accident Report that the injury did not violate school rules, despite APS rules prohibiting employees' and students' possession of dangerous weapons on school premises.

144.     Mr. Alzaga breached his duty when he attempted to deflect liability away from Ms. Mitchell and APS by creating a false and/or misleading report.

145.     Mr. Alzaga's breach in creating a false and/or misleading report injured Plaintiffs by depriving them of evidence supporting their claims, which would normally be required and gathered as part of an appropriately conducted administrative investigation.

146.     Plaintiffs are among the class of persons NMSA 1978, § 30-26-1(C) is intended to protect.

147.     Falsification of a school accident report is among the types of conduct NMSA 1978, § 30-26-1(C) is intended to prevent.

148.     Mr. Alzaga's breach of his duty and violation of NMSA 1978, § 30-26-1(C) contributed to the negligent operation and/or maintenance of the school building.

149.     Mr. Alzaga's breach of his duty and violation of NMSA 1978, § 30-26-1(C) created a dangerous condition that threatened a class of users of a publicly operated and maintained building.

150.     For the reasons stated above, governmental immunity from tort liability is waived under NMSA 1978, § 41-4-6(A).

151.     WHEREFORE, Plaintiffs seek compensatory damages, costs, and any other relief available to them under the New Mexico Tort Claims Act.

**COUNT VI:**
**NEGLIGENT TRAINING/SUPERVISION PURSUANT TO**
**THE NEW MEXICO TORT CLAIMS ACT AGAINST DEFENDANT APS**

152.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

153.    APS is a "governmental entity" as the New Mexico Tort Claims Act defines that term. *See* NMSA 1978, § 41-4-3(B).

154.    APS has a duty to safeguard APS students, employees, and the community generally from unreasonably dangerous conditions on its premises and to provide a safe, healthy work and educational environment.

155.    APS breached this duty by either negligently failing to properly train Ms. Mitchell on how to teach and supervise sword-fighting with the necessary safety equipment; or negligently failing to train and supervise Ms. Mitchell on APS policies prohibiting all persons from entering APS property with a weapon.

156.    If sword-fighting *was* an approved school activity at APS, as Mr. Alzaga's comments on the Student Accident Report suggest that it was, APS negligently and recklessly failed to properly train Ms. Mitchell in how to teach and supervise the activity safely and failed to provide students with the necessary safety equipment to engage safely in this activity.

157.    These failures led to N.S.'s initial injury and her additional pain and suffering by having her serious injury untreated and being without pain medication for at least an hour.

158.    APS created a dangerous condition that threatened a class of users of a public building, including N.S., by negligently failing to train and supervise APS employees, including Ms. Mitchell and Mr. Alzaga, to follow APS safety policies, to respond appropriately to emergency medical situations, and to thoroughly investigate and accurately document accidents on APS premises resulting in personal injury to students.

159.     For the reasons stated above, governmental immunity from tort liability is waived under NMSA 1978, § 41-4-6(A).

160.     WHEREFORE, Plaintiffs seek compensatory damages, costs, and any other relief available to them under the New Mexico Tort Claims Act.

## COUNT VII:
## LOSS OF CONSORTIUM BY ARNOLD AND JUDY GAPUCHIN AGAINST ALL DEFENDANTS

161.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

162.     Plaintiff N.S. has lived with her grandparents, Plaintiffs Arnold and Judy Gachupin, for N.S.'s entire life; the Gachupins regard N.S. as a daughter.

163.     N.S. and the Gachupins shared a close family bond before her injury.

164.     Because of her injury, N.S. has become withdrawn and depressed; as a result, Plaintiffs no longer enjoy as close of a relationship with each other— N.S. is not the same emotionally as she was before her injury, and this has affected the family relationship and the atmosphere in their home.

165.     Before being injured, N.S. participated in daily activities that helped the Gachupins around the house, such as cleaning, cooking, and taking out the trash.

166.     After being injured, N.S.'s ability to help around the house has been significantly impaired.

167.     The Gachupins must now help N.S. with tasks that she used to do alone.

168.     The Gachupins also must now help N.S. with self-care activities that she used to do by herself.

169.     Defendants' tortious acts and omissions caused N.S.'s injury and have caused Plaintiffs to lose their close relationship with each other.

170.    N.S.'s wrongful injury harmed Plaintiffs' relationship with each other such that the Gachupins must assist her with daily activities, and they cannot enjoy life together the same way.

171.    This loss of consortium claim derives from the claims set forth above for which immunity is waived under the New Mexico Tort Claims Act.

172.    WHEREFORE, Plaintiffs seek compensatory damages, costs, and any other relief available to them under the New Mexico Tort Claims Act.

## JURY DEMAND

173.    Plaintiffs demand a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Ryne P. Smith*
Paul J. Kennedy
Jessica M. Hernandez
Elizabeth A. Harrison
Ryne P. Smith
201 Twelfth Street, NW
Albuquerque, NM  87102
(505) 842-8662
pkennedy@kennedyhernandez.com
jhernandez@kennedyhernandez.com
eharrison@kennedyhernandez.com
rsmith@kennedyhernandez.com

*Attorneys for Plaintiffs*

I hereby certify that a true copy of the
foregoing was served via CM/ECF
and email to the following counsel of
record on September 24, 2024:

Michelle Hernandez
Abigail Bannon-Schneebeck
MODRALL SPERLING ROEHL HARRIS & SISK, P.A.
500 Fourth St. NW, Suite 1000
Albuquerque, New Mexico 87102
(505) 848-1800
michelle.hernandez@modrall.com
abigail.bannon-schneebeck@modrall.com

*Attorneys for Defendants Albuquerque Public
Schools and Manuel Alzaga*

Esperanza S. Lujan
Roxie P. Rawls-De Santiago
WALSH GALLEGOS TREVINO KYLE & ROBINSON, P.C.
500 Marquette Ave. NW, Suite 1310
Albuquerque, New Mexico 87102
(505) 243-6864
elujan@wabsa.com
rdesantiago@wabsa.com

*Attorneys for Defendant Loviata Mitchell*

*/s/ Ryne P. Smith*
Ryne P. Smith